**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. _____ |
| INDIAN OAKS APARTMENTS LTD, RUSSELL MANAGEMENT SERVICES LLC, H.J. RUSSELL & COMPANY, and THE RUSSELL REALTY LP, | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, the United States of America ("United States"), by Peter D. Leary, United States Attorney for the Middle District of Georgia, hereby and through the undersigned Assistant United States Attorneys, files this Complaint and states as follows:

**NATURE OF ACTION**

1.    This is a civil action brought by the United States to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* (the "Fair Housing Act"), on behalf of Sherthea Jackson and her three minor children, pursuant to 42 U.S.C. § 3612(o).

**JURISDICTION AND VENUE**

2.    This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

1

3.      Venue is proper in the Middle District of Georgia under 28 U.S.C. § 1391(b) and

42 U.S.C. § 3612(o), because the events or omissions giving rise to this action occurred in the

judicial district, and the property that is the subject of this suit is located there.

## THE PARTIES AND THE SUBJECT PROPERTY

4.      Plaintiff is the United States, and it is filing suit on behalf of Sherthea Jackson and

her minor children. During the time period relevant to this Complaint, Ms. Jackson had three

minor children: J.M.J. (YOB: 2007), A.L.J. (YOB: 2012), and J.D.J. (YOB: 2018).

5.      At all times relevant to this Complaint, Defendant Indian Oaks Apartments LTD

owned Indian Oaks Apartments, located at 1103 East Church Street, Fort Valley, Georgia 31030

(the "Subject Property"). Indian Oaks Apartments is an apartment complex consisting of

approximately 150 units, including units targeted to low-income housing. The units are

"dwelling[s]" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

6.      Defendant H.J. Russell & Company is the umbrella company for Defendant

Indian Oaks Apartments LTD and Defendant Russell Management Services, LLC. Russell

Realty LP was also a General Partner in Indian Oaks Apartments LTD at all relevant times.

7.      Defendant Russell Management Services, LLC managed the Subject Property at

all relevant times and acted as an agent of Defendants Indian Oaks Apartments, LTD, H.J.

Russell & Company, and The Russell Realty LP. Because the actions described below occurred

within the scope of Defendant Russell Management Service, LLC's agency relationship,

Defendants Indian Oaks Apartments LTD, Russell & Company, and The Russell Realty LP are

vicariously liable for Defendant Russell Management Service, LLC's conduct.

## FACTUAL ALLEGATIONS REGARDING THE SUBJECT PROPERTY AND NOTICE OF REASONABLE ACCOMMODATION REQUEST

8.      On or around October 26, 2018, Ms. Jackson moved into unit 10E, a three-bedroom unit on the second floor at the Subject Property. Ms. Jackson moved into the unit with her two oldest children, J.M.J. and A.L.J.; she was pregnant at the time with her third child, J.D.J., who was born shortly after she moved into unit 10E. At all relevant times, she resided with her minor children in unit 10E at the Subject Property.

9.      Beginning in or about December 2019, Ms. Jackson underwent a diagnosis process with her third child, J.D.J., based on physical symptoms that he began exhibiting around his first birthday. In May 2021, J.D.J. was diagnosed with infantile neuroaxonal dystrophy—a genetic disorder that causes, among other things, permanent mobility impairment.

10.     In June 2021, Ms. Jackson verbally notified Nichole Long, an employee of Defendant Russell Management Services, LLC, of her child's diagnosis and requested to move to a ground-floor unit as a reasonable accommodation.

11.     Defendants' reasonable accommodation policy states that current residents requiring a reasonable accommodation for a disability have priority over waitlist applicants.

12.     Beginning in June 2021, Ms. Jackson began to regularly inquire about moving her family to a ground-floor unit. Ms. Jackson continued requesting to move to a ground-floor unit at least twice a month for the next 12 months.

13.     In the summer of 2021, J.D.J received a specially designed wheelchair. The wheelchair consisted of three parts: (1) a base that stayed in the apartment; (2) a stroller attachment that primarily stayed in the car to allow J.D.J. to be moved when he was out of the apartment; and (3) a chair that could attach to the base or the stroller depending on whether J.D.J. was at home or out of the apartment.

14.     On or around October 11, 2021, unit 9A at the Subject Property, a three-bedroom ground-floor unit, became vacant.

15.     On or around October 13, 2021, unit 10D at the Subject Property, a three-bedroom ground-floor unit, became vacant.

16.     On or around November 9, 2021, Ms. Jackson hand-delivered a letter to the office staff at the Subject Property. The letter was written by Dr. Helen Moor, explaining that J.D.J. had quadriplegia.

17.     In November 2021, when Defendants received the letter from Dr. Moor regarding J.D.J.'s quadriplegia, Defendants' "Rent Roll" showed ground-floor units 9A and 10D were vacant. Those units remained vacant through August 1, 2022.

18.     In December 2021, Nichole Long told Ms. Jackson that contractors had been approved to finish a ground-floor unit for her and her family. From January through May 2022, Ms. Jackson was repeatedly told that work was still ongoing in the unit.

19.     Ms. Long was aware of Ms. Jackson's increasing difficulties with basic entry for J.D.J. to and from the second-floor unit.

20.      On or around February 28, 2022, unit 11D at the Subject Property, a four-bedroom ground-floor unit, became vacant. It remained vacant through August 1, 2022.

21.     On or around June 6, 2022, Ms. Jackson sent Defendant Russell Management Services, LLC an email relaying her standing reasonable accommodation request from June 2021.

22.     On June 8, 2022, Ms. Long emailed Destiny Riley, an employee of Russell Management Services, LLC, about transferring Ms. Jackson to a ground-floor unit. Ms. Long stated that a contractor had completed a three-bedroom ground floor unit and instructed Ms.

4

Riley to inform Ms. Jackson that she would need to be completely moved out by the following Monday or Tuesday. Defendants never informed Ms. Jackson of the completed unit or instructed her to move out of her current unit.

23.     On or around July 15, 2022, unit 11C at the Subject Property, a four-bedroom ground floor unit, became vacant. It remained vacant through August 1, 2022.

**FACTUAL ALLEGATIONS REGARDING IMPACT ON THE JACKSON FAMILY**

24.     In the summer of 2021, following his formal diagnosis, J.D.J. was approved to start receiving therapy services, including feeding and speech therapy, physical therapy, and occupational therapy, at Children Playground Therapy in Warner Robins, Georgia. His appointments were typically scheduled for two or three days per week and included up to five hours of therapy per week, depending on J.D.J.'s stamina.

25.     The therapy services J.D.J. received improved his health and quality of life significantly. Additionally, as part of the therapy services, J.D.J. was provided with an assistive communication device that allowed him to communicate by looking at a portable electronic screen that could respond to his visual gazes, enabling him to express thoughts and ideas to his family and interact with them. J.D.J. could not effectively communicate without the device.

26.     In July 2022, after receiving therapy services for approximately one year, J.D.J. was almost four years old and was physically growing. Given his physical size and the severity of his condition, Ms. Jackson could no longer safely carry J.D.J. up and down the stairs to their apartment by herself, especially because of the need to transport both J.D.J. and his specially designed chair.

27.     Many days, Ms. Jackson's older child, J.M.J., stayed home from school to assist his mother with transporting his brother, J.D.J., to the car so that J.D.J. could attend

appointments. But even with J.M.J.'s help, transporting J.D.J. became difficult. As a result, J.D.J. began to miss appointments, including therapy services.

28.     In July 2022, as a direct result of being unable to regularly attend appointments from March through July 2022, J.D.J. was terminated as a patient by the therapy practice. Simultaneously, because of his inability to continue with therapy, J.D.J. lost the use of the electronic effective communication device. His physical, psychological, and emotional losses from the loss of therapy and the communication device are profound.

29.     In addition to the impact on J.D.J., because of the difficulty associated with taking J.D.J. down the stairs to the car, J.M.J. and A.L.J.—who were both too young to drive themselves—had to decline opportunities from about August 2021 through August 2022 to participate in activities outside of the home including, but not limited to, school activities and recreational sports. They could not participate in after-school activities because they needed to ride the bus home; Ms. Jackson could not leave the house to come pick them up from events based on the difficulty associated with getting J.D.J. to the car. As a result, J.M.J. and A.L.J. experienced feelings of sadness, depression, and regret.

30.     Similarly, Ms. Jackson was severely restricted in what she could do because she was unable to transport J.D.J. to the car and did not feel comfortable leaving him in the apartment with a non-family member given the complexity of his condition. Therefore, Ms. Jackson and J.D.J. were unable to leave the apartment during the week to go grocery shopping, run errands, attend to her own appointments, or engage in daily activities outside of the apartment.

31.     Ms. Jackson experienced emotional distress from the physical and emotional toll of being unable to transport J.D.J. into and out of the apartment unit for more than a year.

## FACTUAL ALLEGATIONS REGARDING AMBLING'S GRANT OF THE REQUEST FOR ACCOMMODATION

32.     On or around August 25, 2022, Defendants sold the Subject Property, and Ambling Property Investments, Inc. ("Ambling") became the new property owner and property manager. At the time, Ms. Jackson and her family were still in unit 10E on the second floor.

33.     On or around August 26, 2022, Ambling's "Affordable Rent Roll with Lease Charges" showed that the following three- and four-bedroom ground-floor units were vacant: 6D, 9A, 10B, 10C, 10D, 11C, and 11D.

34.     Ambling had been aware of Ms. Jackson's request for a ground-floor unit as early as June 2022, when an Ambling staff member spoke to Ms. Jackson and discussed the reasonable accommodation request in conjunction with a conversation about the anticipated sale of the apartment complex.

35.     Within a few days of buying the property, Ambling moved Ms. Jackson and her family into an extended stay hotel at no charge while Ambling performed mold remediation on certain units at the Subject Property, including a ground-floor unit that was designated for the Jackson family.

36.     On or around November 27, 2022, Ambling moved Ms. Jackson and her three minor children into ground-floor unit 11D.

37.     Upon moving to a ground-floor unit, Ms. Jackson was able to take J.D.J. and her other children out of the apartment often to engage in general activities of daily living. The family has subsequently been able to go to events and even take small vacations because Ms. Jackson can move J.D.J. in and out of their ground-floor home.

38.     J.D.J. has not been able to return to therapy. Ms. Jackson and J.D.J.'s medical

providers jointly determined that the potential stress of therapy outweighed any potential benefit

given the amount of time he was unable to regularly attend therapy sessions.

## HUD ADMINISTRATIVE PROCESS

39.     On or about July 13, 2022, Ms. Jackson filed a timely complaint with the U.S.

Department of Housing and Urban Development ("HUD"). She amended her complaint on

January 8, 2024.

40.     HUD sent notice of Ms. Jackson's original complaint to Defendants on or about

July 18, 2022, and notice of her amended complaint on January 9, 2024.

41.     In accordance with 42 U.S.C. § 3610, the Secretary of HUD conducted and

completed an investigation of the complaint, attempted conciliation without success, and

prepared a final investigative report. Based upon the information gathered in the investigation,

the Secretary, in accordance with 42 U.S.C. § 3610(g)(1), determined that reasonable cause

existed to believe Defendants had violated the Fair Housing Act. Therefore, on September 4,

2024, the Secretary issued a Charge of Discrimination, in accordance with 42 U.S.C. §

3610(g)(2)(A), charging the above-named Defendants with engaging in discriminatory housing

practices on the basis of disability, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1),

(f)(2), and (f)(3)(B).

42.     On September 23, 2024, Ms. Jackson elected to have the claims asserted in

HUD's Charge of Discrimination resolved in a civil action, pursuant to 42 U.S.C. § 3612(a).

43.     On September 24, 2024, an Administrative Law Judge for HUD's Office of

Hearings and Appeals issued a Notice of Election to Proceed in United States Federal District

Court and terminated the administrative proceeding pursuant to 42 U.S.C. § 3612(o).

## COUNT I: FAIR HOUSING ACT VIOLATIONS

44.    By the actions set forth above, Defendants have:

a.    Discriminated in the rental, or otherwise made unavailable or denied dwellings to Ms. Jackson and her three minor children because of her child's disability, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1);

b.    Discriminated against Ms. Jackson and her three minor children in the terms, conditions or privileges of rental of a dwelling or in the provision of services or facilities in connection with a dwelling, because of Ms. Jackson's child's disability, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(2); and

c.    Refused to make reasonable accommodations in their rules, policies, practices or services, when they refused to transfer Ms. Jackson and her three minor children to a ground-floor unit as a reasonable accommodation for her child's disability when such accommodations were necessary to afford Ms. Jackson and her three minor children equal opportunity to use and enjoy the dwelling, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B).

45.    As a result of Defendants' conduct, Ms. Jackson and her three minor children have been injured and are "aggrieved person[s]" within the meaning of 42 U.S.C. § 3602(i).

46.    The discriminatory actions of Defendants were intentional, willful, and taken in reckless disregard of the federally protected rights of Ms. Jackson and her three minor children.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an order that:

1.     Declares that Defendants' discriminatory policies and practices, as set forth above, violate the Fair Housing Act, 42 U.S.C. § 3601, *et seq*.;

2.     Enjoins Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from discriminating on the basis of disability in violation of the Fair Housing Act;

3.     Orders Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable, Ms. Jackson and her three minor children to the position they would have been in but for the discriminatory conduct; and

4.     Awards monetary damages to Ms. Jackson and her three minor children pursuant to the Fair Housing Act, 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).

The United States further prays for such additional relief as the interests of justice may require.

Dated: October 23, 2024

                                        Respectfully Submitted

                                        PETER D. LEARY
                                        UNITED STATES ATTORNEY

                              BY:     *s/ Lance Simon*
                                        LANCE SIMON
                                        Assistant United States Attorney
                                        Georgia Bar No. 447643
                                        E. BOWEN REICHERT SHOEMAKER
                                        Assistant United States Attorney
                                        Georgia Bar No. 222443
                                        United States Attorney's Office
                                        Middle District of Georgia
                                        P. O. Box 1702
                                        Macon, GA 31202

Tel: (478) 621-2663
Email: Lance.Simon@usdoj.gov
Bowen.Shoemaker@usdoj.gov

11